**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ARISTA RECORDS LLC, *et al.*,

                        Plaintiffs,

      - v -                                     Civ. No. 1:08-CV-765
                                                            (GTS/RFT)

DOES 1-16,

                        Defendants.
_____

**APPEARANCES:**                       **OF COUNSEL:**

LECLAIR, KORONA LAW FIRM         STEVEN E. COLE, ESQ.
*Attorneys for Plaintiffs*
150 State Street, Suite 300
Rochester, New York 14614

RICHARD A. ALTMAN LAW FIRM      RICHARD A. ALTMAN, ESQ.
*Attorney for Doe Defendants 3, 7, 11, and 15*
285 West Fourth Street
New York, New York 10014

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**MEMORANDUM-DECISION and ORDER**

A federation of recording companies have filed a Complaint alleging that sixteen unidentified Defendants (Does 1-16)[1] committed copyright infringement by illegally downloading and distributing Plaintiffs' copyrighted music. Dkt. No. 1, Compl. Concomitantly, on July 17, 2008, Plaintiffs filed an *ex parte* Motion for leave to take immediate discovery in order to identify the Doe Defendants. Dkt. No. 4, Pls.' Mot. The Court granted Plaintiffs' Motion for Expedited Discovery and gave permission to serve a FED. R. CIV. P. 45 Subpoena upon the State University of New York at Albany (SUNYA) seeking information sufficient to identify each Doe Defendant,

---

[1] For our purposes, the relevant Doe Defendants are 3, 7, 11, and 15. All other Doe Defendants have been voluntarily dismissed from this action. *See* Dkt. Nos. 11, 30, & 35.

which may include their name, school address, permanent home address, telephone number, e-mail address, and media access control (MAC) addresses.  Dkt. No. 5 at p. 2.

Presently before the Court is Doe Defendants' Motion to Quash the Subpoena.  Dkt. Nos. 24,  Defs.' Mot. to Quash, 25, Richard A. Altman, Esq., Decl., dated Oct. 6, 2008, & 26, Mem. of Law.[2]

Plaintiffs filed a Response in opposition to Defendants' Motion.  Dkt. No. 27.  Both parties sought permission to submit further responses.  Doe Defendants filed a Reply Memorandum of Law, Dkt. No. 32, and Plaintiffs filed a Sur-Reply Memorandum of Law, Dkt. No. 37.

## I. BACKGROUND

The thirteen Plaintiffs assert that at all times they were the copyright owners or licensees of exclusive rights to certain sound recordings under the United States copyright laws.  Compl. at ¶ 20. Those exclusive rights include the right to reproduce and distribute the copyrighted recordings to the public.  *Id*. at ¶ 21.  Plaintiffs allege that each Defendant, who were, at all relevant times, students of SUNYA, "without the permission or consent of Plaintiffs, has continuously used, and continue to use, an online media distribution system to download and/or distribute to the public certain of the Copyrighted Recordings."  *Id.* at ¶ 22.  Plaintiffs further allege that each Defendant wilfully, intentionally, and in disregard of Plaintiffs' rights infringed Plaintiffs' copyright and exclusive rights to copyright.  *Id*. at ¶ 25.  Attached to the Complaint are sixteen schedules, which

---

[2] The Doe Defendants' Motion to Quash was originally filed on September 15, 2008. *See* Dkt. Nos. 12-15. Subsequently, Defendants sought an opportunity to amend the Motion so that Doe Defendant 3 could be added to the Motion, which request was granted. *See* Dkt. Nos. 22, Defs.' Lt.-Mot., dated Oct. 1, 2008, & 23, Text Order, dated Oct. 2, 2008.

identify each Internet Protocol address (IP), the type of Peer-to-Peer (P2P)[3] Network used by each prospective defendant, and specific downloads uploaded from each of the IP addresses. *Id*., Ex. A.

Submitted in support of Plaintiffs' *ex parte* Motion for Expedited Discovery was a Declaration from Carlos Linares, an attorney and Vice President for the Recording Industry Association of America, Inc. (RIAA).[4] Dkt. No. 4-2, Carlos Linares Decl., dated July 8, 2008. Peer-to-Peer network systems enable Internet users, among other things, to: (1) index files into shared directories on a specific computer that can be searched for and transferred to other users; (2) search for files stored on other users' computers; (3) transfer exact copies of files from one computer to another *via* the Internet; and (4) allow users to further distribute the files to other users. *Id*. at ¶ 7. In order to detect which Internet user may be infringing copyrighted recordings, RIAA hired MediaSentry, Inc. (MediaSentry) to conduct searches of the Internet, as well as file-copying services, for infringing duplicators of copyrighted sound recordings. MediaSentry is able to identify by IP address, which are unique in and of themselves, a user of P2P networks who is distributing or sharing music files over the network. Once a possible infringer is located, Media Sentry downloads music files from the user's computer that is being offered to others on the P2P network and listens to the downloaded recordings to determine if they are in fact copyrighted. Based upon that review, RIAA and MediaSentry then determine whether a possible infringement has occurred. *Id*. at ¶¶ 11-15.

That user's IP address is connected to another network that is administered by an Internet Service Provider (ISP), such as a college or university, and that network maintains a log of IP

---

[3] Exhibit A to the Complaint identifies Gnutella and Ares Warez as the P2P networks employed in this case.

[4] Presumably, all of the named Plaintiffs are members of RIAA.

address allocations. *Id*. Even though MediaSentry may have identified an alleged infringer's IP address, there is no other way to identify the individual without seeking information directly from the network administrator and, for that reason, recording companies use the subpoena process to obtain the names of possible defendants from the ISP. *Id.* at ¶ 16. In our case, RIAA has collected from each Doe Defendant a list of files that each Defendant was distributing to the public. *Id*. at ¶ 19; Compl. at Ex. A.

On July 22, 2008, The Court granted Plaintiffs permission to seek discovery from SUNYA. Dkt. No. 5. We directed SUNYA to notify each the Doe Defendant that it intends to disclose the requested IP identifying information to Plaintiffs and provide each with a copy of the Subpoena, with the expectation that both SUNYA and Doe Defendants could move to quash the Subpoena. *Id*. Apparently, SUNYA notified each of the sixteen Doe Defendants, because four have responded and seek to quash the Subpoena, pursuant to FED. R. CIV. P. 45(c)(3)(A). Dkt. No. 24. In challenging the Subpoena, the Doe Defendants raise that (1) the Subpoena is an infringement of their First Amendment Rights, (2) the Court lacks personal jurisdiction over them, (3) the Complaint fails to state a cause of action; and, (4) the joinder of all Doe Defendants into this single action is improper. Dkt. No. 25, Altman Decl.

## II. DISCUSSION

### A. Failure to State a Cause of Action

Section 106 of the Copyright Act confers a "bundle of exclusive rights to the owner of the copyright," those rights being the right "to publish, copy, and distribute." *Harper & Row Publishers, Inc. v. Nation Enters*., 471 U.S. 539, 547 (1985); 17 U.S.C. §§ 106(1) & (3). In order to make a claim of copyright infringement, a plaintiff must allege (1) ownership of a valid copyright

and (2) copying of constituent elements of the work that are original. *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. at 548).

Without the Doe Defendants exactly conceding that Plaintiffs are the rightful owners of the Copyrighted recordings listed on Exhibit A of the Complaint, apparently the ownership element is not being contested. Nonetheless, the Doe Defendants argue that the Complaint fails to state a cause of action, primarily because the Complaint does not specifically plead facts alleging that the Doe Defendants "actually distributed" copyrighted recordings. It is their considered view that the United States Supreme Court in *Bell Atlantic v. Trombly*, 550 U.S. 544 (2007), set a new heightened pleading standard.[5] Because of this purportedly enhanced pleading requirement, they argue that Plaintiffs must do more than merely plead, based upon information and belief, that each Defendant used an online media distribution system to download and/or distribute to the public certain copyrighted recordings. In a nutshell, by raising that the Complaint does not set forth specific facts to support a copyright infringement cause of action, the Doe Defendants are indirectly, and maybe prematurely, seeking a motion to dismiss the Complaint, pursuant to FED. R. CIV. P. 12(b)(6),

---

[5] Contrary to Doe Defendants' claim that *Bell Atlantic* heightened the pleading standard, Dkt. No. 26 at p. 15, the Supreme Court actually did the opposite. By its opinion in *Bell Atlantic*, the Supreme Court abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 127 S.Ct. 1955, 1968 (2007) (quoting *Conley*, 355 U.S. 41, 45-46 (1957) (internal quotation marks omitted)). In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* at 1969.

This same argument was raised in *Elektra Entm't Group, Inc. v. Barker*, 551 F. Supp. 2d 234 (S.D.N.Y. 2008). That court simply and directly responded by noting that there is no "universal standard of heightened pleading," but instead as we have noted above, a "flexible 'plausible standard which obliges a pleader to amplify a claim with some factual allegation in those contexts where such amplification is needed to render the claim *plausible*.'" *Id.* at p. 237 (quotation marks and emphasis in the original). In actuality, all that is required is that "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Bell Atl. v. Trombly*, 127 S.Ct. at 1968; *see also Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 11 (S.D.N.Y. 2008) (detailed allegations are not necessary).

without first being designated an actual party to this litigation. The Court does not know of any procedure which would allow prospective parties the right to move to dismiss a complaint that has not been officially served upon them. But, as discussed below, determining that there is in fact a *prima facie* case stated is a factor we must weigh when deciding whether a judicial discovery process may proceed in contravention of a person's First Amendment right to speak anonymously. *See infra* Part II.B.

### B. First Amendment Rights

Essentially because, at this juncture, Plaintiffs charge the Doe Defendants with acting anonymously, the Doe Defendants argue that they have a qualified privilege under the First Amendment of the United States Constitution. Reasoning that since a person has a constitutional right to anonymous speech, and using a computer is considered anonymous speech, the Doe Defendants, relying upon New York law and Federal Rule of Civil Procedure Rule 45(c)(3)(A)(iii), which conceptually limits discovery of privileged information, asks this Court to quash the Subpoena on this ground as well.

The Court concurs with the Doe Defendants that the Supreme Court has recognized a right of anonymity within the First Amendment. *Watchtower Bible and Tract Soc'y of New York, Inc. v. Vill. of Stratton*, 536 U.S. 150, 166 (2002) (citing *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 197-200 (1999)). Such a right to anonymity is critical to promoting core First Amendment types of expressions. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995). And this First Amendment protection extends to expression on the Internet. *Reno v. ACLU*, 521 U.S. 844, 870 (1997). But, this right to anonymous speech is not absolute. *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004). Yes, there is some level of First Amendment

protection afforded anonymous expressions by an Internet user, but it is quite confined, and such expression qualifies as speech only to a finite degree, and, therefore, the expectation of privacy is limited. Id. at 564 (in a thorough, cogent, and highly persuasive analysis of the First Amendment anonymous speech issue, the district court found that a person who engages in P2P sharing is not engaging in true expression, since it is not as broad as political expression, and, thus, is deemed limited speech); *Elektra Entm't Group, Inc. v. Does 1-9*, 2004 WL 2095581, at *5 (S.D.N.Y. Sept. 8, 2004) (noting that there is only a minimal expectation of privacy in downloading and distributing copyrighted songs without permission). As the Supreme Court has made evidently clear, which Doe Defendants concede, the First Amendment is not a safe haven for copyright infringement. *In re Verizon Internet Servs., Inc.*, 257 F. Supp. 2d 244, 260 (D.D.C. 2003), *rev'd on other grounds sub nom. RIAA v. Verizon Internet Serv. Inc.*, 351 F.3d 1229 (D.C. Cir. 2003) (citing, *inter alia*, *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. at 568). When considering whether downloading items from the Internet should be recognized as protected speech, many courts have found that it does not rise to that level. *Arista Records LLC v. John Does 1-19*, 551 F. Supp. 2d at 8 (noting that "courts have routinely held that a defendant's First Amendment privacy interests are **exceedingly small** where the 'speech' is the alleged infringement of copyrights") (emphasis added). Because of the modest First Amendment right to remain anonymous when there is an allegation of copyright infringement, the Court must balance the tension between this minimally protected constitutional right and a copyright owner's right to disclosure of the identity of a possible trespasser of its intellectual property interest.

In weighing the factors regarding the need for disclosure versus an Internet user's limited First Amendment right to remain anonymous, the Honorable Dennis Chinn, United States District

Judge, devised a five-factor analysis to assist courts in performing this balancing approach. *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d at 565-67.  Those five factors are: (1) whether plaintiffs have made a concrete showing of a *prima facie* claim of actionable harm; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need to obtain the subpoenaed information to advance the claim; and (5) the party's expectation of privacy.  *Elektra Entm't Group, Inc. v. Does 1-9*, 2004 WL 2095581, at *4 (citing, *inter alia*, *Sony Music*, 326 F. Supp. 2d at 565-67 & *In re Verizon Internet Servs. Inc.*, 257 F. Supp. at 260-61).  This Court is persuaded by the profundity of this methodology and we will apply these factors in our case.

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  "Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice."  *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphasis added)).  On a motion to dismiss, the trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheuer v.*

*Rhodes*, 416 U.S. 232, 236 (1974).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 753 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 753 n. 6 (1963)*; see also Wheeldin v. Wheeler*, 373 U.S. 647, 648 (1963) (inferring facts from allegations of complaint). A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007). The Court of Appeals for the Second Circuit has recently interpreted the foregoing language as requiring that lower courts apply "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*[,]" but does not require a heightened pleading standard for civil rights claims. *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). In spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

The Doe Defendants posit that, "[e]ssentially, the complaint alleges that defendants are infringers because they are 'making available' copyrighted song files, but without any evidence of actual distribution of those files to the public. This fails to state a claim." Dkt. No. 26, Defs.' Mem.

of Law at p. 16. We note that the Complaint does not actually state that the Defendants "made available" copyrighted songs, though that would be a reasonable inference. The Complaint actually avoids that pleading pitfall, which has led to exhaustive discussion by courts in other cases, and states specifically that each Defendant "continuously downloaded and/or distributed to the public additional sound recordings owned by or exclusively licensed to Plaintiffs[.]" Compl. at ¶ 22. Considering Exhibit A to the Complaint, as we must, facts about the downloads and likely distributions are further divulged. And, viewed in the light most favorable to Plaintiffs, they have, in fact, alleged that the Doe Defendants did distribute Plaintiffs' protected intellectual property.

We acknowledge that there has been considerable debate amongst the district courts as to whether actual distribution must be pled, or, conversely, whether employing the phrase "making available" in its stead does not constitute sufficient pleading.[6] We are persuaded by the majority of cases and the school of thought that Plaintiffs have adequately pled that Defendants distributed Plaintiffs' copyrighted work, by merely stating, within the four corners of the Complaint, the distribution allegation alone. The tasks of pleading and proving that each Defendant actually distributed the copyright work do not necessarily collide at this juncture of the case, and dismissal of the Complaint would not be appropriate at this stage. *Elektra Entm't Group, Inc. v. Barker*, 551

---

[6] The "making available" theory of distribution is not without supporting precedent. The Fourth Circuit in *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199 (4th Cir. 1997), held that "[i]n order to establish 'distribution' of a copyrighted work, a party must show that an unlawful copy was disseminated to the public." *Id*. at 202. The Circuit noted, however, that by placing a protected work into a collection, indexing it in a catalogue system, and making the protected work available to be borrowed or browsed by the public, "it has completed all the steps necessary for distribution to the public." *Id*. Now, courts have disagreed whether an interpretation of *Hotaling* can rightfully conclude that making available for others to download over a peer-to-peer network may constitute distribution. We have decided to forsake debating the merits of the *Hotaling* ruling since we are addressing this matter on other grounds.

F. Supp. at 245;[7] *see also Arista Records LLC v. John Does 1-19*, 551 F. Supp. 2d 1 6-7 & 9-10 (D.D.C. 2008) (adequately pled a *prima facie* case by alleging "distribution"). We further subscribe to the school of thought that the use of peer-to-peer systems to download and distribute copyrighted music constitutes copyright infringement. *Arista Records LLC v. John Does 1-19*, 551 F. Supp. 2d at 10 (citing, *inter alia*, *Sony Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d at 565-66);[8] *see also Elektra Entm't Group, Inc. v. Does 1-9*, 2004 WL 2095581, at *4 (S.D.N.Y. Sept. 8, 2004).

In light of the fact that Plaintiffs have pleaded the two essential elements for a copyright infringement cause, ownership and copying, *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. at 361, and further noting that Plaintiffs were able to sample some of the downloads from shared folders, *Elektra Entm't Group, Inc.*, 2004 WL 2095581, at *4, they have sufficiently stated their claim and their Complaint survives this "virtual" motion to dismiss.[9]  And, as we know, the use of P2P systems to download and distribute copyrighted materials has been found to constitute copyright infringement. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 918-23 (2005) (noting that P2P networks facilitate a staggering quantity of infringement of copyrighted music); *A&M Records, Inc v. Napster, Inc.*, 239 F.3d 1004, 1013-14 (9th Cir. 2001) (cited in *Sony Music Entm't Group, Inc. v. Does 1-40*, 326 F. Supp. 2d at 566). Consequently, the Court finds this factor

---

[7] *Elektra Entm't Group, Inc. v. Barker* provides a rather comprehensive analysis of the concepts of the right to distribute under copyright law, actual distribution, and making available, which analysis included a survey of cases, a reading of the legislative history, and a discussion on the disagreements amongst the district courts.  551 F. Supp. 2d 234 at 239-45. Although the court found that the complaint failed to state a cause of action by attempting to equate "making available" with the statutory language of "offer to distribute," the district court, nevertheless, found that plaintiffs therein adequately alleged that defendant distributed plaintiffs' copyrighted works. *Id* at  245.

[8] In fact, the complaint considered in *Arista Records* is identical to the Complaint in our case. 551 F. Supp. 2d at 11 (finding the "allegations (taken as true) are more than sufficient to find that Plaintiffs' right to relief rises 'above the speculative level[.]'"); *see also Sony Music Entm't Inc., v. Does 1-40*, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004).

[9] We also wish to bring to Defendants' attention that, if indeed the Complaint was deficient, Plaintiffs would have the right to amend its Complaint as a matter of course before Defendants served their responsive pleadings. FED. R. CIV. P. 15(a)(1)(A) & (B).

in favor of Plaintiffs.

The discovery information sought by the Plaintiffs is specific and reasonable. The Subpoena seeks the IP user's name, address, telephone number, email address, and MAC, and nothing else that would be considered intrusive. All of this information will reasonably facilitate Plaintiffs' efforts to serve process upon the alleged offenders in order to bring suit against them for their alleged conduct. Once again, this is another element that tips in Plaintiffs' favor.

Not only have Plaintiffs established that there is no alternative means to obtain the subpoenaed information, but it is plainly obvious that they lack the capacity to identify each Doe Defendant solely by possessing the IP addresses. Without SUNYA (the ISP) making available its list of allocated IP addresses to individual students so that a culprit of copyright infringement may be traced, Plaintiffs would be forever stymied in their efforts to protect their property rights and to bring an action against those alleged wrongdoers. Indubitably, there is a central and critical need for this information in order for Plaintiffs to advance their claims and ascertaining the identities of the Doe Defendants is pivotal and indispensable in their effort. Both of these factors tilt towards Plaintiffs.

Lastly, as precedents have advised us, the Doe Defendants have a minimal expectation of privacy, especially when they allegedly engaged in P2P network sharing. Conceptually, the notion of allowing others to have access to one's database by virtue of the Internet in order to pluck from a computer information and data that the computer owner or user wishes to share renders void any pretext of privacy.

In light of our assessment above, Plaintiffs have clearly established each of the factors to their benefit. Just like so many other courts that have grappled with this balancing function, and

consistent with their analyses, we find Plaintiffs' need for disclosure outweighs any First Amendment interest claimed by Doe Defendants. *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d at 9 (recognizing the principles stated in *SONY Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556).[10] This Court finds that Doe Defendants' minimal First Amendment right to remain anonymous must yield to Plaintiffs' right to use discovery, and in this case a subpoena, to gather computer users' identities so that they may pursue their claims.

### C. MediaSentry's Investigation

As noted above, MediaSentry was retained by RIAA to assist in investigating those who may have infringed their members' copyrighted recordings. MediaSentry, as we also know, entered into various P2P networks in order to follow a trail to certain or specific IP addresses to determine if the addressee had downloaded and distributed protected materials via the P2P network. We further know that MediaSentry visited at least sixteen SUNYA IP addresses, looked within shared files posted at these IP addresses, and uploaded those files to determine if the musical recordings were copyrighted and owned by RIAA's members. The result of the investigation is reflected in Exhibit A of the Complaint.

The Doe Defendants complain that MediaSentry is not a New York State licensed investigator, a fact MediaSentry concedes. Because MediaSentry is unlicensed, the Doe Defendants suggest that MediaSentry may have violated New York law and committed a Class B Misdemeanor, GEN. BUS. L. § 70(4), and further intimate that any evidence MediaSentry may have gathered should

---

[10] Although the Doe Defendants did not raise this issue, it deserves mentioning that *Arista Records LLC v. Does 1-19*, answered, in the context of identifying the student who has been given a particular IP address, the question of whether the Family Educational Rights and Privacy Act (FERPA) bars the disclosure of student's directory information. To the contrary, FERPA actually provides for the disclosure of directory type of information such as a students' name, address, telephone number, and the like. 551 F. Supp. 2d at 5-6; *see also Arista Records LLC v. Does 1-4*, 589 F. Supp. 2d 151 (D. Conn. 2008).

consistent with their analyses, we find Plaintiffs' need for disclosure outweighs any First Amendment interest claimed by Doe Defendants. *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d at 9 (recognizing the principles stated in *SONY Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556).[10] This Court finds that Doe Defendants' minimal First Amendment right to remain anonymous must yield to Plaintiffs' right to use discovery, and in this case a subpoena, to gather computer users' identities so that they may pursue their claims.

### C. MediaSentry's Investigation

As noted above, MediaSentry was retained by RIAA to assist in investigating those who may have infringed their members' copyrighted recordings. MediaSentry, as we also know, entered into various P2P networks in order to follow a trail to certain or specific IP addresses to determine if the addressee had downloaded and distributed protected materials via the P2P network. We further know that MediaSentry visited at least sixteen SUNYA IP addresses, looked within shared files posted at these IP addresses, and uploaded those files to determine if the musical recordings were copyrighted and owned by RIAA's members. The result of the investigation is reflected in Exhibit A of the Complaint.

The Doe Defendants complain that MediaSentry is not a New York State licensed investigator, a fact MediaSentry concedes. Because MediaSentry is unlicensed, the Doe Defendants suggest that MediaSentry may have violated New York law and committed a Class B Misdemeanor, GEN. BUS. L. § 70(4), and further intimate that any evidence MediaSentry may have gathered should

---

[10] Although the Doe Defendants did not raise this issue, it deserves mentioning that *Arista Records LLC v. Does 1-19*, answered, in the context of identifying the student who has been given a particular IP address, the question of whether the Family Educational Rights and Privacy Act (FERPA) bars the disclosure of student's directory information. To the contrary, FERPA actually provides for the disclosure of directory type of information such as a students' name, address, telephone number, and the like. 551 F. Supp. 2d at 5-6; *see also Arista Records LLC v. Does 1-4*, 589 F. Supp. 2d 151 (D. Conn. 2008).

not be admissible.  Because of the questionable admissibility of the evidence, Defendants contend that the Subpoena should be quashed.

The Court respectfully disagrees with the Doe Defendants that this information was illegally obtained on several accounts.  Although we are uncertain of the impact General Business Law § 70 has on what MediaSentry actually did or may have done, by placing recordings into a shared file for the entire world to visit and capture, without the permission of the rightful owners, the Doe Defendants are hardly in a position to claim trespass, force, or fraud by MediaSentry.  They are not in the position of even arguing that they had an expectation of privacy.  If the allegation that the Doe Defendants placed copyrighted recording into index files for others to take at will and hereby trampled upon the exclusive owner's copyright domain are true, they have forfeited any expectation of privacy they may have had.  Even if the information was illegally obtained, this does not necessarily foretell its inadmissibility during a civil trial.  Other than an errant citation to a United States Supreme Court case, the Doe Defendants do not proffer any other precedent to uphold this notion that illegally obtained evidence is somehow excluded from a civil trial, and this Court has been unable to unearth any case to confirm this novel concept.[11]  Moreover, General Business Law § 170 does not have a provision that espouses an exclusionary rule.  Lastly, any discussion about admissibility at trial is evidently premature and not a matter for us to consider at this initial stage

---

[11] The Doe Defendants cite *One 1958 Plymouth Sedan v. Pa.*, 380 U.S. 693 (1965) for the proposition that illegally obtained evidence is not admissible in a civil case.  But these Defendants have either clearly misread this Supreme Court case or misapprehend its significance.  True, *One 1958 Plymouth Sedan* is a civil forfeiture case.  But rather than state a legal principle applicable to civil litigation, the Supreme Court's discussion was restricted to forfeiture proceedings which are **quasi-criminal** in character.  *Id*. at 700 (emphasis added).

As far as this Court knows, the exclusionary rule - that illegally obtained evidence is not admitted at trial - is an active legal precept within the criminal law realm and specifically exclusive to Fourth and Fifth Amendment violations.  Moreover, the exclusionary rule is applicable solely against government or its agents' intrusion, and was not intended nor expanded to encompass individuals and businesses.

Case 1:08-cv-00765-GTS-RFT   Document 40   Filed 02/18/09   Page 15 of 18

of the litigation. Thus, the Court does not accept the Doe Defendants' invitation to determine that MediaSentry's investigation was illegal nor that an illegality of this nature is purposeful grounds for quashing a subpoena.

### D.  Personal Jurisdiction

The Doe Defendants contend that Plaintiffs have not established personal jurisdiction over them and cannot establish that they can be found within New York State. They assert that the use of a computer is not a sufficient basis to advance personal jurisdiction. Obviously, at this juncture, Plaintiffs cannot demonstrate that the Doe Defendant reside or can be found anywhere because their identities and addresses remain unknown. Without the identifying information, an assessment of personal jurisdiction would be idle speculation. All of this begs the question of whether ruling on personal jurisdiction would be premature at this stage of the litigation? And the answer would be in the affirmative because at this occasion, we are only concerned with expedited discovery to determine whether the Doe Defendants' identities will be revealed by a subpoena and whether that subpoena will be quashed on any legal grounds. The Court finds the Doe Defendants' contention unpersuasive. A personal jurisdiction dispute, at this time, should not serve as a bar to Plaintiffs' effort to discover the Doe Defendants' identities. Furthermore, Plaintiffs would be able to amend their Complaint to properly plead personal jurisdiction, without intervention of the Court, once identities have been exposed. *See* FED. R. CIV. P. 15(a)(1)(A) & *supra* note 9. To be clear, our ruling does not preclude raising jurisdictional matters at a more appropriate time.

### E.  Joinder of Defendants

The Doe Defendants argue that they should not be joined together in a single litigation because there is no common element or alleged common act among them. They further contend that

*-15-*

Plaintiffs cannot identify any transaction or occurrence that is common to them. The only alleged common element is that they are alleged users of SUNYA's network, and that, in and of itself, is insufficient to join them under Rule 20. FED. R. CIV. P. 20. We note that Rule 20 is not a basis for dismissal but actually grounds to sever parties from an action. *Id.* at 20(a)(2).

Rule 20(a)(2) provides for permissive joinder of defendants:

Persons . . . may be joined in one action as defendants if [] (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Because of the statute's permissive nature, and the fact that each case may be unique, any analysis of the viability of joinder of parties fits altogether within a case by case approach.

Here, we have only four Defendants who have moved to quash the subpoena. All of the other Doe Defendants have been voluntarily dismissed from the action. Much like the circumstances in *Elektra Entm't Group, Inc. v. Does 1-9*, 2004 WL 2095581, at *8, we find ourselves with a narrow group of potential defendants. Further, we are not certain that any of these current Doe Defendants will maintain their same posture if sued. To keep this finite community of defendants within this lawsuit will not, at this juncture of the litigation, generate any prejudice or harm to their respective defenses. Moreover, a joint defense may be more advantageous than previously considered. And should any prejudice or conflict arise, the Court can address the matter at that time. As the facts and circumstances become ripe and suggest or warrant severance, all can avail themselves of such a request then. Therefore, at this stage of the litigation, the Court finds that a request to sever the Doe Defendants as premature.

Lastly, in view of our conclusions above, Doe Defendants' application for attorney fees is

denied.

### III. CONCLUSION

As stated above, all five factors are decided in Plaintiffs' favor and the Doe Defendants' First Amendment right to anonymous speech must give away to Plaintiffs' need to obtain their identities. Plaintiffs have sufficiently stated a cause of action pursuant to 17 U.S.C. § 106 and have demonstrated a *prima facie* claim for copyright infringement. They have adequately alleged ownership of the copyrighted recordings and their exclusive rights into those recordings and the copying of constituent elements of the work that are originals. Further, they have satisfactorily pinpointed the copyrighted songs that were downloaded and/or distributed with enough specificity to alert the Doe Defendants as to the nature of the claim against each of them and how they are identified as alleged violators of Plaintiffs' copyright interest. *See* Compl., Ex. A. Discovery is narrowly tailored and without it, Plaintiffs could not proceed with their prosecution of these alleged copyright infringements. The matters of the admissibility of the fruits of MediaSentry's investigation, and the issues of personal jurisdiction and joinder are premature.

For the foregoing reasons, it is hereby

**ORDERED**, that Doe Defendants' Motion to Quash, Dkt. No. 24, is **DENIED**, in all respects; and it is further

**ORDERED**, that SUNYA shall respond to the Subpoena within twenty (20) days of the filing date of this Order.

**IT IS SO ORDERED**.

February 18, 2009
Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge